# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| RICHARD MORRILL GREY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 09-645-P-H |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found that the plaintiff, who alleges that he is disabled by degenerative disc disease, navicular fracture, labral tear, and memory loss, is capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of degenerative disc disease, a left foot navicular fracture, and a right shoulder labral tear, Finding 3, Record at 12; that he retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 15, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk three and two hours, respectively, in the workday, sit six hours in the workday, sit with the option to stand as needed, reach overhead occasionally, perform frequent gross and fine manipulation, and tolerate moderate noise exposure, but could not operate left foot controls, work at heights, or work with dangerous machinery or vibration, Finding 5, *id.* at 18; that, considering his age (30 years old, defined as a younger individual, on the alleged disability onset date of March 16, 2007), education (high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 19-20; and that he, therefore, was not disabled from March 16, 2007, through the date of decision (September 21, 2009), Finding 11, *id.* at 21.[2] The Decision Review Board declined to disturb the decision, *see id.* at 1-4, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than

---

[2] The plaintiff is insured for purposes of SSD benefits through December 31, 2010. *See* Finding 1, Record at 12.

his past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(g), 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff seeks reversal and remand on any of three bases, contending that the administrative law judge erred in failing to (i) specify to a vocational expert the frequency of the plaintiff's need to sit and stand, (ii) properly evaluate the RFC opinion of a purported treating source, Susan Hage, D.O., and (iii) find a severe mental impairment of memory loss. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 11) at 2-6. I find no reversible error, and accordingly recommend that the decision of the commissioner be affirmed.

### A. Need To Alternate Sitting and Standing

As the plaintiff points out, *see id*. at 2, the administrative law judge found that he needed to "sit with the option to stand as needed," Finding 5, Record at 18, and yet omitted to convey the "as needed" component to the vocational expert at hearing or otherwise explain to that expert the frequency of the need to alternate sitting and standing, *see id*. at 71 (conveying only that the plaintiff required "a sit/stand option"). The plaintiff complains that this omission contravened the requirements of Social Security Ruling 96-9p ("SSR 96-9p"), a proposition for which he cites *Wasilauskis v. Astrue*, Civil No. 08-284-B-W, 2009 WL 861492, at *5 (D. Me. Mar. 30, 2009) (rec. dec., *aff'd* Apr. 21, 2009). *See* Statement of Errors at 2.

3

However, in a subsequent decision, this court made clear that the requirement in SSR 96-9p to specify the frequency of a need to alternate sitting and standing pertains only to "situations in which the administrative law judge has found a residual functional capacity for sedentary work, or the job at issue is defined as sedentary[.]" *Levesque v. Astrue*, Civil No. 09-331-B-W, 2010 WL 2076013, at *4 (D. Me. May 20, 2010) (rec. dec., *aff'd* June 18, 2010). Here, the administrative law judge found the plaintiff capable of performing light work, *see* Finding 5, Record at 18, including two jobs classified as light, those of parking lot attendant, existing in numbers of 68,000 nationally, and personal care attendant, existing in numbers of 354,000 nationally, *see id*. at 20, 72. While the administrative law judge also found the plaintiff capable of performing three sedentary jobs, those of surveillance system monitor, existing in numbers of 16,000 nationally, document preparer, existing in numbers of 98,000 nationally, and credit checker, existing in numbers of 16,000 nationally, *see id*. at 20, 72-73, any error in failing to specify the frequency of the need to sit and stand with respect to those jobs is harmless. Even disregarding the three sedentary jobs, there is no suggestion that the two light jobs, combined, exist in less than significant numbers in the national economy.[3]

### B. Treatment of Dr. Hage's Opinion

The plaintiff next asserts that the administrative law judge erred in merely recounting Dr. Hage's RFC opinion, failing to explicate what weight, if any, he accorded it or to supply any

---

[3] At oral argument, the plaintiff's counsel contended that, although his client technically was found capable of performing a reduced range of light work, including two identified light jobs, his capacity to stand and/or walk aligned more closely with that for sedentary than for light jobs and, thus, SSR 96-9p continued to control on the question of specification of the frequency of the need to alternate sitting and standing. I am unpersuaded. SSR 96-9p expressly pertains to sedentary work. In any event, the plaintiff was found capable of standing or walking for a total of five hours in an eight-hour workday, *see* Finding 5, Record at 18, a capacity closer to that for light work than for sedentary, *see* SSR 96-9p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010), at 154 (full range of sedentary work entails standing and walking for a total of no more than about two hours in an eight-hour work day); Social Security Ruling 83-10, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 ("SSR 83-10"), at 29 (full range of light work entails standing or walking for a total of approximately six hours in an eight-hour workday).

4

reason for discounting it. *See* Statement of Errors at 3-4. He correctly notes that a treating source opinion may not be rejected unless a decision maker gives a "good reason" for doing so. *See id.*; *see also, e.g., Golfieri v. Barnhart*, No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

The administrative law judge indeed failed to articulate the amount of weight, if any, he gave to the Hage opinion or, to the extent that he discounted it, supply any rationale for doing so. *See* Record at 19. Nonetheless, as counsel for the commissioner pointed out at oral argument, on appeal from the administrative law judge's decision, the Decision Review Board found that the Hage opinion was not entitled to great weight and supplied a detailed rationale for that conclusion. *See id.* at 1-2. It correctly observed, for instance, that (i) as of December 8, 2008, the plaintiff had been referred to Dr. Hage but had not yet seen her, *see id.* at 415, 478, (ii) Dr. Hage signed her opinion on April 9, 2009, only four months later, *see id.* at 480-85, (iii) the plaintiff's representative submitted no treatment records from Dr. Hage to support her RFC assessment, *see* Statement of Errors at 3 n.3, (iv) the record does not indicate how many times Dr. Hage saw the plaintiff or what examinations or tests were conducted, *see id.*, (v) Dr. Hage's opinion conflicted with those of other physicians, including the state agency physicians, *compare* Record at 480-85 *with, e.g., id.* at 289-96, 381-88, and (iv) Dr. Hage's statement was inconsistent with the plaintiff's activities of daily living, such as completing a 100-hour course at the police academy and engaging in hunting activities. *see id.* at 61, 478. The Decision Review Board accordingly supplied the requisite "good reason" for discounting the Hage opinion.

### C. Failure To Find a Severe Impairment of Memory Loss

The plaintiff finally seeks reversal and remand on the basis of the administrative law judge's failure to find a severe impairment of memory loss. *See* Statement of Errors at 4-6. As

he points out, *see id*. at 5, although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims, *see, e.g., McDonald v. Secretary of Health & Human Servs*., 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

The plaintiff correctly notes that the administrative law judge failed even to mention records from the Maine Center for Integrated Rehabilitation ("MCIR"), where the plaintiff received treatment for cognitive issues. *See* Statement of Errors at 5; Record at 12-17, 470-75. Yet, I conclude that any error in failing to address these records was harmless because the administrative law judge's determination that the condition was nonsevere was supported by substantial evidence.

The record indicates that the plaintiff complained to Dr. Wall on June 20, 2008, that he was forgetting a lot of things and he wondered if he had a head injury. *See id*. at 420. Dr. Wall noted that the plaintiff stated that, following a motor vehicle accident in 2006, he had a lump on the back of his head and experienced some headache and dizziness afterward. *See id*. The plaintiff told Dr. Wall that he had been to a career center, which was going to administer a test to assess his memory. *See id*. Dr. Wall assessed the plaintiff with memory loss and indicated that he would consider a neuropsychological referral if the career center testing noted any abnormalities. *See id*. at 421.[4]

---

[4] Following a motor vehicle accident in 2006, Dr. Wall assessed the plaintiff with, *inter alia*, post-concussive
*(continued on next page)*

6

On October 3, 2008, the plaintiff complained to Dr. Wall that he had been having problems with memory since his accident and would like some further evaluation. *See* Record at 416. Dr. Wall referred him to the MCIR because of traumatic brain injury and concussion, stating that "he might benefit from some therapy and relearning exercises." *Id*. at 417.

Testing was administered on October 10 and 17, 2008, by MCIR speech language pathologist Jamie Jarvis, who found impairment in attention, executive function, memory, perception/discrimination, and visuospatial skills, and borderline impairment in problem solving, reasoning, and insight/awareness. *See id*. at 476. Jarvis concluded: "It is likely that [the plaintiff] is having att[ention] prob[lems] which are adding to memory [problems] and are more apparent in daily, instruct[ional] activities than in formal testing, in a quiet env[ironment]. Where [the plaintiff] knows he needs to focus and will be asked to recall info[rmation] [the plaintiff] is felt approp[riate] for some brief intervention to [increase] att[ention], memory and insight re: his (mild?) cond[ition]." *Id*. at 477.

On October 17, 2008, the plaintiff developed four memory strategy goals with MCIR, with a planned discharge date of April 2009. *See id*. at 471. As of November 2008, he had met one goal, made major improvement in another, made minor improvement in a third, had not yet worked toward the fourth, which was termed "new," and had added a fifth. *See id*. In a summary dated November 26, 2008, Jarvis stated:

> Client established a simple external memory strategy system with input from his wife and this therapist. At this point, it appears to be serving his needs, but we may change it to a system that compartmentalizes more information, as notes are

---

syndrome. *See, e.g.*, Record at 454. Dr. Wall referred the plaintiff to a neurologist, Judd M. Jensen, M.D., for post-traumatic benign positional vertigo, headaches, facial numbness, and blurred vision. *See id*. at 323. Dr. Jensen noted that on September 14, 2006, the plaintiff also complained of memory loss. *See id*. However, in a November 16, 2006, treatment note, Dr. Jensen stated that the plaintiff's cognitive dysfunction had resolved when he ceased taking the medication Topamax. *See id*. at 321-22. Insofar as appears, the plaintiff did not specifically complain about memory loss again until he raised the subject with Dr. Wall in June 2008. *See id*. at 420.

7

getting lost within the basic reminder list the client is keeping. We also began education regarding energy allocation, attention and metacognition with accompanying strategies. The client has taken well to this information and has begun to successfully implement suggestions to increase efficiency. Using these strategies, the client "finally cooked a meal without burning it," although the increased vigilance did cause notable fatigue. Continued treatment is recommended.

*Id*. at 470.

In a December 8, 2008, note, Dr. Wall indicated that the plaintiff had been getting counseling at MCIR, which had been helping. *See id*. at 478.

The plaintiff testified at his hearing, held on August 31, 2009, that since his car accident, he had forgotten a lot of things and would get confused, for example, forget where he was going or forget that he was cooking, causing his stove to catch on fire. *See id*. at 51-54. He acknowledged that strategies given by his counselors had helped with these issues. *See id*. at 52, 54-55.

During the hearing, the administrative law judge questioned the plaintiff, *inter alia*, regarding his cognitive ability:

> Q  Sir, at Exhibit 21F from Dr. Streetmill (Phonetic) dated April 6, 2009, the note says that you recently graduated from a police academy course.[5]
>
> A  Yes.
>
> Q  When did you take that course?
>
> A  March. I graduated April 3rd.
>
> Q  You have such physical and mental limitations as you've asserted in the last 30 minutes.
>
> A  Uh-huh.

---

[5] The administrative law judge referred to an April 6, 2009, note of Gregory P. Leather, M.D., who was treating the plaintiff primarily for left foot injuries suffered in an automobile accident. *See* Record at 488. Dr. Leather had noted: "He informs me that he has recently graduated from police academy course which would qualify him for part time work with the State Police and he will continue to pursue that." *Id*.

8

Q     How were you able to graduate from that police academy course?

A     It was a 100-hour course. There was all classroom, no physical. And I talked with Jamie Drivers [sic] at MCIR who was helping me with my head injuries and she gave me a lot of extra techniques in different note taking. And I had every part of the course they did a Power Point presentation. I have copies of all of them so when I was done with the class I was still kind of taking the class around the clock sort of thing to study to get everything to stick.

Q     What were you graduated in your class?

A     I scored a[n] 86 on my test.

***

Q     So at Exhibit 18F, page 6, from October '08, you reported that you were taking a class in Back Hunting Safety and that you aced that. Is that accurate?[6]

A     Yes.

Q     Is it fair to conclude that –

A     That class was a[n] eight-hour course at my friend's house. It was just my father, me and the instructor who was a good friend, and we went over the test out loud. That's how we took the test.

Q     So is it fair to conclude that you have pain –

A     Yes.

Q     – and your pain limits markedly your ability to work?

A     Yes.

Q     Is that what keeps you from working in your mind?

A     No. Well, that is part of it, yes. I believe my –

Q     Let me interpret [sic] for a second.

---

[6] The administrative law judge referred to a notation by Jarvis, in the speech language therapy assessment dated October 10 and 17, 2008, that the plaintiff "reads magazines/papers; class in basic handgun safety [no] new learning problems – 'aced test[.]'" Record at 475.

9

>           A       – a lot of my upper body.
>
>           Q       This is what I don't understand about your case. You are engaged in these activities such as hunting and graduating from a police academy course and doing minor chores around your house, and a safety course –
>
>           A       Uh-huh.
>
>           Q       – which reflect an apparent ability to maintain concentration, persistence and pace, and a certain degree of physical ability, and when considered in context it seems like you have a marked inability to, you have problems with standing and walking. I don't see why you can't do sedentary work.

*Id.* at 61-63.

The administrative law judge went on to find, in his decision:

> The claimant, while suffering some cognitive deficits from motor vehicle accidents, did not testify of functional limitations relating to depression, anxiety or other me[n]tal impairment. His purported cognitive limitations are also contradicted by his graduation from a state police academy course and passing a gun course.

*Id.* at 13. He added: "I do not find the claimant's testimony of problems concentrating and remembering to be severe enough to cause work-related limitations." *Id.* at 19.

Despite failing to mention the plaintiff's treatment by MCIR, the administrative law judge supportably found that any cognitive deficit that the plaintiff suffered was nonsevere based on his demonstrated success in testing and coursework, including his successful completion of a state police academy course. The MCIR materials do not necessarily indicate otherwise: Jarvis questioned at intake whether the plaintiff's cognitive impairment was mild, and the plaintiff was noted to have made some significant gains with treatment. *See id.* at 471, 477.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 6th day of October, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge